

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00802-CV

### IN THE INTEREST OF L.A.D.-L., M.R.D.-L., U.A.D.-T., AND D.R.D.-T., CHILDREN

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA00824
Honorable Martha B. Tanner, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed:  May 30, 2018

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her children, L.A.D.-L., M.R.D.-L, U.A.D.-T., and D.R.D.-T.[1]  On appeal, Mother argues the trial court abused its discretion by denying her motion for continuance and challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination was in the children's best interest.  We affirm the trial court's order.

### BACKGROUND

Following a significant history of referrals beginning in June 2008, alleging neglectful supervision, physical and sexual abuse, and medical and physical neglect, on April 20, 2016, the

---

[1] The trial court's order also terminated the parental rights of respondent fathers A.R.T., J.V.N., D.L., and J.J.  The respondent fathers do not appeal.

Texas Department of Family and Protective Services ("Department") filed its original petition to terminate parental rights, alleging danger to the physical health or safety of the children. The Department filed an amended petition on February 14, 2017. The Department developed a service plan. However, the permanency hearing orders signed by the trial court on March 8, 2017 and June 9, 2017 indicate Mother failed to "demonstrate[] adequate and appropriate compliance with the service plan." Thereafter, the Department moved to terminate Mother's rights. The case was tried to the bench, and Mother's rights to her children L.A.D.-L., M.R.D.-L, U.A.D.-T., and D.R.D.-T. were terminated. This appeal followed.

### MOTION FOR CONTINUANCE

Mother contends the trial court erred by overruling her motion for continuance. A motion for continuance shall not be granted except for sufficient cause supported by affidavit, consent of the parties, or by operation of law. TEX. R. CIV. P. 251. We review the trial court's denial of a motion for continuance for an abuse of discretion. *In re R.F., III*, 423 S.W.3d 486, 490 (Tex. App.—San Antonio 2014, no pet.). Under this standard, we sustain the trial court's determination unless the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id.* When a motion for continuance is not made in writing and verified, we presume the trial court properly exercised its discretion. *In re E.L.M.M.*, No. 04–15–00001–CV, 2015 WL 1914770, at *2 (Tex. App.—San Antonio 2015, no pet.) (mem. op.).

On April 13, 2017, eleven days prior to trial, Mother's appointed counsel filed a Motion for Continuance, advising that the trial court appointed counsel on October 17, 2016 and that Mother's whereabouts were unknown until April 5, 2017, when Mother contacted counsel for the first time. The reason for the continuance, as stated in the motion, was for counsel to meet with Mother, advise her of the proceedings, and allow Mother to assist in her representation. On April 17, 2017, the trial court signed an order to retain the suit on the court's docket and reset the

dismissal date to October 24, 2017. In that order, the trial court additionally reset the trial date from April 24, 2017 to June 9, 2017. A permanency hearing, rather than a trial, took place on June 9, 2017, and the trial court reset the trial date for October 6, 2017. On September 21, 2017, the Department filed a motion for continuance, indicating that an important witness would be unavailable for trial on October 6, 2017. The trial court reset the trial date to October 13, 2017.

At the beginning of trial, Mother's counsel announced not ready, noting that Mother was not present for trial. The trial court overruled the not-ready announcement. Mother's counsel then informed the trial court he had been unable to reach Mother and that there were witnesses about whom Mother was supposed to provide information. Counsel then requested of the trial court:

> I will submit to the Court that [Mother] had filed a motion for continuance previously [on April 13, 2017] in this matter that was not set. I am asking the Court to accept the fiat this morning requesting that continuance … This is our first request for continuance.

In response, the Department objected to a continuance and pointed out that the case must be heard before October 21, 2017 because of the October 24, 2017 dismissal deadline. The Department additionally pointed out that Mother's availability was still in question and it would be difficult to coordinate schedules in the short period of time. The trial court overruled Mother's request for a continuance and began hearing testimony.

Mother arrived at trial during the testimony of the Department's second witness. Mother's counsel requested a brief recess, after which counsel re-urged the motion for continuance. The trial court again overruled the motion. Mother's counsel moved for continuance again later during the trial; the trial court again overruled counsel's requests.

In this case, although the record contains a written motion for continuance, it does not contain a supporting affidavit. Additionally, Mother did not file a written motion after the trial date resets or at the time of trial based on obtaining information about Mother's witnesses or for

the purpose of obtaining those witnesses. *See also Gregg v. Cecil*, 844 S.W.2d 851, 853 (Tex. App.—Beaumont 1992, no writ) (when seeking a continuance because of the absence of witnesses, the party must show with particularity the due diligence used; mere conclusions in an accompanying affidavit are insufficient). Because Mother's motion for continuance did not comply with Rule 251 and Rule 252, we cannot conclude the trial court abused its discretion in denying the motion for continuance. *See id.* (holding the trial court did not abuse its discretion in denying motion for continuance when the record did not contain a written motion or affidavit).

Accordingly, Mother's first issue is overruled.

## TERMINATION OF PARENTAL RIGHTS

### Standard of Review and Statutory Requirements

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West Supp. 2017); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found by clear and convincing evidence that Mother's actions satisfied the grounds listed in Texas Family Code section 161.001(b)(1)(D), (E), (N) and (O) and section 161.003 as alleged in the petition for termination and that termination of Mother's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (R), (2), 161.003 (West Supp. 2017).

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

**Best Interests**

In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b). We also apply the non-exhaustive *Holley* factors to our analysis.[2] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id*.

*Discussion*

At the time of the trial, the children ranged in age from seven to twelve years' old and were all placed at Meadowlands. Rebecca Herrera, M.R.D.-L.'s and D.R.D.-T.'s counselor, testified D.R.D.-T. was happy with the idea of being adopted. According to Herrerra, M.R.D.-L. expressed anger toward Mother, was very upset and exhibited mood swings and violent behaviors. Herrerra opined that therapy for M.R.D.-L. could extend for years and agreed that M.R.D.-L. was "not in a

---

[2] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

position to go home with any person." Department caseworker Toby David-Tripp confirmed that M.R.D.-L. had been in five different placements during the pendency of this case.

The record shows Mother's service plan required she undergo a psychiatric evaluation, drug assessment, and random drug testing; take part in parenting classes and a family violence program; and attend weekly parent-child visits. However, the evidence and testimony reflects that Mother did not comply with her service plan. The Department's removing caseworker, Amber Fidone, testified Mother did not participate in parenting classes. Herrera testified Mother was routinely late for parent-child visits. When Mother was late, the children became anxious and engaged in verbal altercations. Because of the negative effects of Mother's routine lateness to the parent-child visits, the visits were stopped. *See In re R.B.*, 200 S.W.3d 311, 316 (Tex. App.—Dallas 2006, pet. denied) (indicating that a parent's missed visits and late arrival to visits serve as an example of acts or omissions indicating termination is in the children's best interests).

Clarissa Salinas, the family therapist for all four children beginning in June 2017, testified Mother was late to four of seven sessions, which affected the productivity of the sessions. Salinas testified she recommended discontinuing therapy after the fifth session. According to Salinas, although Mother was aware of how her behaviors affected the children, Mother did not change that behavior. Additionally, Christina Campos from Family Violence Prevention Services testified that although Mother completed the program, she did not do so successfully. Campos stated Mother's attendance was inconsistent and that Mother routinely arrived 30 minutes to an hour late for sessions. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (evidence that the appellant failed to comply with the court-ordered service plan supported the trial court's best-interest determination).

The record indicates three of the four children have been diagnosed with mental health issues for which they were prescribed medication. L.A.D.-L. was diagnosed with impulse control

with conduct disorder, adjustment disorder, ADHD, and neglect of child. M.R.D.-L was diagnosed with ADHD, depression, and bipolar disorder. M.R.D.-L. was also diagnosed with insomnia. D.R.D.-T. was diagnosed with adjustment disorder with mood depression, disruptive mood dysregulation disorder, child neglect, ADHD, and learning disorder. Herrera additionally testified M.R.D.-L. suffered from PTSD as a result of a sexual assault and experiencing violence in the home.

Fidone testified the children often did not receive their medications because Mother either sold the children's medications or used them herself. *See In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.) (noting that a trier of fact could infer from a parent's past behavior "apparent apathy regarding [a] child's prescribed medications would continue" and that such evidence supports a finding termination is in the child's best interest). Fidone further testified that Mother additionally admitted to using synthetic marijuana. *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A parent's drug use supports a finding that termination is in the best interest of the child."). The record also indicates that Mother was diagnosed with schizophrenia, anxiety, bipolar disorder, and PTSD. Mother testified she had mental illness all her life.

Fidone also testified Mother did not have stable housing because she was routinely evicted. According to Fidone, this occurred because Mother used the money she received from social security benefits and from illegally selling food stamps to purchase synthetic marijuana rather than paying for utilities and other bills, sometimes resulting in the utilities being discontinued. Fidone testified Mother declined the Department's assistance in obtaining transitional housing. When Mother obtained housing, and Fidone visited the residence, the conditions of the residence were not good — the residence was in a state of disrepair. The trial record indicates that for much of the pendency of this case Mother was transient or homeless. Additionally, the children were absent

from school for long periods of time. David-Tripp confirmed Mother declined assistance in obtaining housing through Fairweather, SAM Ministries, and Haven for Hope until approximately May 2017 and that she did not know where Mother had been living prior to August 2017. Mother testified she wanted to complete the classes required by her service plan and was trying to find another doctor, as well as alternate housing resources. However, Mother could not provide a current address, and she acknowledged she was not prepared for the children to be home with her immediately. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (a stable permanent home for a child is an important consideration); *In re J.R.W.*, 2013 WL 507325, at *9 ("A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs.").

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; In re J.P.B., 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment).

Mother's second issue is overruled.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights.

Irene Rios, Justice